RICHARD MILLER and Another, Appellants, Impleaded with WIN-FIELD SCOTT JONES, Plaintiff, v. GEORGE W. MILLER, as Sole Surviving Executor and Trustee, etc., of ANDREW MILLER, Deceased, and Others, Respondents.

*Will — terms "wife" and "children" defined — action to compel an executor's accounting — when costs, payable out of the estate, are properly refused.*

The word "wife" of a man, as that word is used in a will, is presumed to mean the woman to whom he is legally married, and the term "children" means, in its usual and ordinary significance, legitimate descendants.

When, in an action brought to compel the accounting of an executor and trustee named in a will by alleged beneficiaries thereunder, it is shown that the plaintiffs therein are not beneficiaries under such will, it is proper to refuse to allow such plaintiffs a bill of costs out of the estate.

APPEAL by the plaintiffs, Richard Miller and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 6th day of April, 1893, upon the decision of the court rendered at the Monroe Special Term dismissing the plaintiffs' complaint upon the merits and for costs.

This action was brought by alleged beneficiaries under the will of Andrew Miller, deceased, to compel the accounting of the executor and trustee in such will named.

Paragraph first of the testator's will was as follows :

"*First.* I give and devise all my real estate, lands and tenements of every name and nature and wherever situated, whether in the United States or Canada, to my friends James L. Angle and Freeman Clark, of Rochester, N. Y., and my sons, George W. Miller and James M. Miller, of the same place, in trust, nevertheless, to sell, dispose of and convey so much thereof as may be necessary to discharge in full my funeral expenses and all my just debts and no more, and to divide the rents and profits of the residue thereof equally between my said two sons, but not to be liable for their debts, in trust for their support and the support of their families during the life of the survivor of my said sons, or if either of them die during that period then my executors hereinafter named are to apply the one-half of the said rents and profits to the support of his wife and children. And if at the decease of the survivor of my said sons they should each leave children them surviving, my said real estate is to be divided into two equal parts, and the one part thereof given to the children of my said son George W., and the other part to the children of my said son James M., and if at that period there should be children of only one of my said sons surviving him, then the whole of my said real estate is to be divided equally between them. And it is further provided that if my executors, after the payment of my just debts as aforesaid, shall at any time deem it for the benefit of my estate to sell any portion thereof they may do so, but shall invest the proceeds thereof in the purchase of other real estate for the purposes of the trust above named."

*M. Fillmore Brown*, for the appellant.

*George W. Miller*, respondent, in person.

Judgment appealed from affirmed, with costs, on opinion of RUM-SEY, J., at Special Term.

The opinion of the Special Term was as follows:

RUMSEY, J. :

Upon the proofs there is hardly any claim that James M. Miller was ever married to Margaret Fitzhugh. Whatever might have been said on that point when the plaintiffs rested their case, such a marriage was shown to have been impossible when it was made to appear that the alleged husband had before then been actually married to Eliza Jane Shepard, and that she was living at the time of the trial of this action. The principal part of the cause of action was, therefore, eliminated from the case, and the plaintiffs stand now upon their claim that Margaret Bell and her children are the wife and children of James M. Miller referred to in the will of Andrew Miller, and are the persons intended to be beneficiaries under that name.

In considering this claim we must start with the proposition that the wife of a man is the woman to whom he is legally married, where there is such a person, and that by the term " children " is meant, in its usual and ordinary significance, his legitimate descendants. (*Mowatt* v. *Carow*, 7 Paige, 328; *Shearman* v. *Angel*, 1 Bailey Eq. 351; 23 Am. Dec. 166.) In the highest English court it has been said and decided that the word " children " in a will means *prima facie* " legitimate children," as much so as if the word " legitimate " had been introduced before it, unless, when the facts are ascertained, some repugnancy or inconsistency would result from so interpreting it. The probable intention of the testator cannot be taken into account. (*Dorin* v. *Dorin*, L. R. [7 H. L. Cas.] 568. See, also, *Paul* v. *Children*, L. R. [12 Eq.] 16.)

It is plain that the will contains no expression or description which will point to or identify Margaret Fitzhugh or her children as the persons referred to as the " wife and children " of James M. Miller. But the plaintiffs claim that if there are no legitimate children it is competent to prove the situation of testator's family to show that in the particular case he used the term " children " to mean natural

children. If that rule is applied here the question will be, what has been made to appear with regard to Andrew Miller's knowledge of the relations between his son and this woman, and whether, from the facts so appearing, there arises any presumption that he intended to provide for them under the description of the "wife and children" of his son.

While it is clear that there were improper relations between James M. Miller and Margaret Fitzhugh in Rochester in 1856, there is no evidence except her own that the person with whom she lived as her husband there or in Hamilton was James M., the son of Andrew Miller. Mr. David Jones knew James M. Miller, and he saw him and Margaret together in 1862 or 1863, when they brought the plaintiff to W. I. Jones to be kept. It may be inferred from that testimony that the intimacy between James M. and Margaret still continued, and that he acknowledged that child as his. But with that exception not one witness was shown, except the alleged wife, who, having known James M. Miller, could or did say that it was he who lived with this woman as her husband. They said that she was called Mrs. Miller, but their evidence as to her alleged husband entirely fails to identify him. Mrs. Roth saw him go there, but she never saw him to his face and she did not know James M. Miller and never saw the man she supposed was he until she saw him at Ontario street. Mrs. Kiernan saw the alleged husband there, but she never knew James M. Miller and cannot identify him. Mrs. Tierney never saw any man there. These are all the witnesses who speak of the association of James M. and Margaret. They all lived in Rochester and they knew nothing of the life of these people in Hamilton. It is noticeable that they give no description of James M. Miller, and there is nothing to show that he was the person who lived with Margaret on Ontario street, so far as their evidence goes. They were not shown the picture which Mrs. Bell identified as that of the father of her children, and which hung in her parlor in her house in Hamilton. Whether or not it was James M. Miller with whom she lived on Ontario street, there is no pretense that his father, Andrew Miller, knew of the intimacy, or of the children, or anything about it. This is the only important matter with regard to that period of the lives of these two people, and this must all the time be borne in mind.

But when we come to the life in Hamilton the evidence is still more meagre. It is to be remembered that the plaintiffs try to show that this woman and James M. Miller lived in that city as man and wife for several years; that a family of children grew up there; that she was recognized as his wife, and that Andrew Miller knew all this, recognized the children as his grandchildren, and had that familiarity with and affection for them which raises a presumption that he had them in mind when he made his will and intended to provide for them.

It is apparent from the evidence in the case that James M. Miller was well known in Hamilton. His father had property there and spent much time in the city, as did James also. His brother lived there with his family at the very time that it is asserted that James and Margaret lived there as man and wife. It is strange that not one person of all those who must have seen these persons and Andrew Miller in the same house, and associating together, is brought here to prove it, if it took place. The plaintiffs say their cohabitation was open and notorious; that it was legitimate and proper, and so recognized by the parents of James, and yet not one person of all in that city is brought to swear that these people even lived there together. It is a strange failure of proof on a vital point. So this important matter stands solely upon the testimony of interested witnesses, and, in the last analysis, the only evidence there is to show that the person with whom she lived in Hamilton was James M. Miller, or that the older man was Andrew Miller, is that furnished by Margaret Fitzhugh.

Her eldest child, born in 1857, was only six years old when Andrew Miller died. None of the children pretend to say anything about him. They say that there was an old man there who paid some attention to them, but who he was they do not pretend to say. So with their father. They saw him seldom. Those who describe him say he resembled the picture produced, and that they were told this was a picture of their father. All this amounts to nothing aside from the testimony of Mrs. Bell. So the whole case of the plaintiffs to bring them within the will hinges on her testimony. Aside from the fact that she has a deep interest in this action, her character, as shown by this testimony, is not such as to enhance her

credit. But that point need not be discussed. Her testimony is that James M. Miller lived with her as her husband in several houses in Hamilton, some of them owned by his father. She says that the man who lived with her there was the man whose picture is produced on the trial. This picture was on the wall, and she said it was the picture of her children's father, and told them so, and Richard swears it resembles the man whom he called his father. Mrs. Bell swears it was James M. Miller's picture, and that he gave it to her. Now, if there is anything established in this case, it is that that picture is not the portrait of James M. Miller. No one swears that it was except Mrs. Bell. Mr. David Jones, a witness for the plaintiffs, the only one besides Mrs. Bell who knew James M. Miller, was not shown the picture. On the part of defendant, three men who knew James M. Miller testified that the picture was that of another man, and not of him. James M. Miller lived in Rochester many years. There were, I doubt not, a very large number of people in that city who could have told whether or not the picture resembled him or was his portrait. As none of them were called it is fair to assume that the fact that it was his likeness was disputed. The overthrow of that important part of Mrs. Bell's testimony strikes a fatal blow at her credibility. If the man she lived with in Hamilton was not James M. Miller, the plaintiffs' case is at an end.

So, if she is wrong in her statement that the old man who played with the children in her rooms was Andrew Miller, the case miserably fails. If the man she then lived with was not James, of course the old man was not James' father. To suppose that he would visit his son's paramour while she was living with another man is absurd. There is not one particle of evidence to support her claim that this old man was the testator. No witness ever heard him speak of this woman or of these children. No other person than she ever saw him there. He made them no presents. He was not with them in the street. No one says he took them anywhere. There is not one tittle of evidence that he knew them, except the testimony of this woman, discredited by her history, not probable in itself, and totally uncorroborated. It is incredible that Andrew Miller should have visited these people so frequently and familiarly without some one of Mrs. Bell's friends seeing him there or some one of his acquaintances hearing him speak of them. In the absence of some

testimony of this kind or of some other kind to bolster up the testimony of Mrs. Bell, I would not feel at liberty to accept it as decisive of an important case. Unless it is accepted there is nothing to show that Mr. Miller knew of these children or had any regard for them or intended to refer to them when he made the devise for the benefit of the wife and children of his son James. The plaintiffs' claim that they are beneficiaries under the will, therefore, falls to the ground. Then their case fails. There can be no reason for giving them costs out of the estate. They have no more right to bring an action for construction of the will of Andrew Miller than for the construction of the will of A. T. Stewart. Indeed, the complaint divulges no such object. The action is purely and simply to get one-half of Andrew Miller's estate. The fact that they have failed to get what they prayed for affords no reason why the true owners of the estate should be compelled to pay to them a premium for their efforts to deplete it by way of a bill of costs.

Whatever claim these people might have had in justice to share in James M. Miller's estate, they surely have none in that of his father, who was in no way responsible for them or chargeable with them.

The award of costs must follow the usual rule.